UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Jacques Elias, et al.

   v.                                    Case No. 15-cv-330-AJ
                                         Opinion No. 2017 DNH 068
Specialized Loan Servicing, LLC, et al.

**MEMORANDUM AND ORDER**

In an amended complaint, the plaintiffs, Jacques and Sabine Elias, allege that the defendant, Specialized Loan Servicing ("SLS"), mishandled their mortgage, thereby forcing their property into foreclosure. Doc. no. 20. SLS moves for summary judgment, doc. no. 30, and the plaintiffs object, doc. no. 35.[1] For the following reasons, SLS's motion is granted.

**Summary Judgment Standard**

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Xiaoyan Tang v. Citizens Bank, N.A., 821 F.3d 206, 215 (1st Cir. 2016). "An issue is 'genuine' if it can be resolved in favor of either party, and a fact is 'material' if it has the potential of affecting the outcome of the case." Xiaoyan Tang, 821 F.3d

---

[1] SLS filed a reply to the plaintiffs' objection. Doc. no. 37. The plaintiffs filed a notice of intent to file a surreply (doc. no. 39) but no surreply was filed.

at 215 (internal quotation marks and citations omitted).  At the summary judgment stage, the court draws "'all reasonable inferences in favor of the non-moving party,' but disregard[s] 'conclusory allegations, improbable inferences, and unsupported speculation.'"  Fanning v. Fed. Trade Comm'n, 821 F.3d 164, 170 (1st Cir. 2016) (citation omitted), cert. denied, 85 U.S.L.W. 3324 (U.S. Jan. 9, 2017).

"A party moving for summary judgment must identify for the district court the portions of the record that show the absence of any genuine issue of material fact."  Flovac, Inc. v. Airvac, Inc., 817 F.3d 849, 853 (1st Cir. 2016).  Once the moving party makes the required showing, "'the burden shifts to the nonmoving party, who must, with respect to each issue on which [it] would bear the burden of proof at trial, demonstrate that a trier of fact could reasonably resolve that issue in [its] favor.'"  Id. (citation omitted).  "This demonstration must be accomplished by reference to materials of evidentiary quality, and that evidence must be more than 'merely colorable.'"  Id. (citations omitted).  "At a bare minimum, the evidence must be 'significantly probative.'"  Id. (citation omitted).  The nonmoving party's failure to make the requisite showing "entitles the moving party to summary judgment."  Id.

**Background**

I. **Factual Background**

On September 8, 2006, Sabine Elias executed a promissory note, which was secured by a mortgage on property located in Amherst, New Hampshire. Doc. no. 30-3, at 9-12. Sabine Elias alone signed the note and was named as sole borrower under the mortgage. Id. at 12, 13. Both plaintiffs signed the mortgage. Id. at 27.

On May 19, 2012, the plaintiffs entered into a loan modification with Bank of America, which was the servicer of the mortgage at that time ("2012 modification"). See doc. no. 30-5. Under this modification, an amount of $102,535.12 was deferred and treated as non-interest-bearing principal forbearance. Id. at 5. If the plaintiffs met certain conditions specified in the 2012 modification agreement, including not falling more than three months behind on their payments under the 2012 modification, this amount would be forgiven over the course of three years. Id.

At some point after the 2012 modification was executed, Bank of America informed the plaintiffs that they qualified for better modification terms under a federal program (the "federal modification"). Elias Aff. ¶ 6 (doc. no. 35-1). Bank of America informed the plaintiffs that in order to qualify for the federal modification, they would have to be two months behind on

3

their payments under the 2012 modification. Id. The plaintiffs pursued this modification, falling two months behind on their mortgage payments. Id. ¶ 7.

On November 1, 2012, Bank of America transferred service of the plaintiffs' loan to SLS. Doc. no. 30-3, at 31. At this time, the plaintiffs had not received the federal modification from Bank of America. On November 9, 2012, SLS sent the plaintiffs a statement informing them of the transfer and instructing them to send all future payments to SLS at an address provided. Id. SLS specifically noted that as of November 1, 2012, Bank of America "w[ould] not accept payments from [the plaintiffs]." Id. The plaintiffs continued to make payments to Bank of America, which were returned. Elias Aff. ¶ 11. By the time the plaintiffs started sending payments to SLS, they were more than three months behind on their mortgage payments. Id. ¶ 14.

In the summer of 2014, SLS offered the plaintiffs a new loan modification ("2014 modification" or "2014 modification agreement"). See doc. no. 20-3. SLS informed the plaintiffs that to accept this offer, they must sign and return two original copies of the 2014 modification agreement by August 31, 2014. Id. at 2.

The 2014 modification agreement indicated that an amount of $102,535.12 had been deferred in a previous modification, which

4

would not accrue interest, but would remain due and owing at the end of the loan and was "not a forgiveness of a partial debt . . . ." Id.  The plaintiffs believed that this amount had been forgiven under the 2012 modification.  They based this belief on a 1099-C tax form issued by Bank of America on February 26, 2013, see doc. no. 20-5, at 5, which a tax professional had informed them meant that forgiveness of this amount had actually occurred, see Elias Aff. ¶ 31–32.  The plaintiffs filled out 1040X and 982 tax forms based on this belief.  See doc. no. 20-5.  Plaintiffs' counsel conceded at the hearing that this belief was mistaken, and that the $102,535.12 was not forgiven "as a matter of law."

There is no dispute in the record that the plaintiffs signed the 2014 modification agreement on August 30, 2014, and that they mailed at least one copy of that agreement to SLS that day.  There are two versions of the 2014 modification agreement in the record, however,[2] and the parties dispute which version or versions the plaintiffs sent to SLS.

---

[2] One version of this document is docketed as document number 20-3.  The other is docketed at both document number 20-4 and document number 30-3, at pages 36 through 38.  For ease of citation, to the extent either of these documents can be cited to support a proposition in this order (i.e., they are identical), the court will only cite to document number 20-3.  But to the extent the differences in these documents are relevant to a proposition in this order, the court will cite to the appropriate document or documents.

Both versions of the 2014 modification agreement contain the same typed agreement language and both are signed by the plaintiffs and dated August 30, 2014. Compare doc. no. 20-3 with doc. no. 20-4. In one version there is a handwritten notation next to the reference to the $102,535.12 in prior deferred principal, which states that "[t]his debt was cancelled by [Bank of America] as of June 2. Form 1099-C attached." Doc. no. 20-3, at 5. Both plaintiffs initialed and signed next to this notation. Id. The other version does not contain this notation. See doc. no. 20-4, at 4.[3]

The plaintiffs alternatively contend that they only sent the notated version of the 2014 modification agreement to SLS or that they sent SLS both the notated and non-notated versions of the agreement. SLS contends that it only received the non-notated version. The only version of this document in the plaintiffs' records is the version with the notation. See Elias Dep., at 6, 7 (doc. no. 37-1). The only version of this document in SLS's records is the version without the notation. See doc. no. 30-3, at 36–38.

Though they dispute the issue of loan forgiveness, both parties agree that the 2014 modification agreement went into

---

[3] Though these documents differ in other minor respects, this notation is the sole difference relied upon by the plaintiffs in opposition to summary judgment. The court will limit its discussion accordingly.

6

effect, and the plaintiffs do not bring a claim challenging the validity of this agreement.  The plaintiffs were unable to remain current under this agreement.  Facing the prospect of foreclosure, the plaintiffs filed the instant action.

## II. Procedural Background

The plaintiffs originally filed suit against SLS and Bank of America in state court.  Doc. no. 1-1, at 4-12.  The defendants removed this action here (doc. no. 1) and Bank of America moved to dismiss for failure to state a claim (doc. no. 13).  The plaintiffs voluntarily dismissed Bank of America (doc. no. 15) and were granted leave to amend their complaint.  The plaintiffs filed a three-count amended complaint against SLS on January 4, 2016.  Doc. no. 20.

SLS moved for summary judgment on all three counts.  Doc. no. 30.  In reviewing this motion, the plaintiffs' objection (doc. no. 35) and SLS's reply (doc. no. 37) the court determined that a hearing was appropriate and additional briefing was necessary.  On February 2, 2017, the court issued a procedural order scheduling a hearing and directing the parties to brief three discrete issues.  See Feb. 2, 2017 Procedural Order (doc. no. 44) (hereinafter "supplemental briefing order").  The parties timely submitted supplemental briefing (doc. nos. 46, 47, 49, 50) and the hearing was held on March 7, 2017.

**Discussion**

The plaintiffs bring claims against SLS for violations of 12 C.F.R. § 1024.38(b)(4) ("Count I"), for negligent misrepresentation ("Count II"), and for breach of the covenant of good faith and fair dealing ("Count III"). SLS moves for summary judgment on all three counts.

### I.   **12 C.F.R. § 1024.38(b)(4)**

At the hearing, plaintiffs' counsel conceded, notwithstanding arguments to the contrary in the plaintiffs' supplemental briefing, that no private right of action exists under 12 C.F.R. § 1024.38(b)(4) and that SLS was entitled to summary judgment on this claim. SLS's motion for summary judgment is accordingly granted as to Count I.

### II.  **Negligent Misrepresentation**

SLS argues that there is no genuine dispute of material fact in the record from which a reasonable trier of fact could conclude that SLS made negligent misrepresentations to the plaintiffs. SLS further argues that this claim is barred by the economic-loss doctrine.

The court turns first to the economic-loss doctrine. Under this doctrine, the contractual relationship between a lender and a borrower typically precludes recovery in tort. See Moore v. Mortg. Elect. Registration Sys., Inc., 848 F. Supp. 2d 107, 133 (D.N.H. 2012) (citing Wyle v. Lees, 162 N.H. 406, 409–10

(2011)).  This principle is premised on the theory that "[i]f a contracting party is permitted to sue in tort when a transaction does not work out as expected, that party is in effect rewriting the agreement to obtain a benefit that was not part of the bargain."  Plourde Sand & Gravel Co. v. JGI E., Inc., 154 N.H. 791, 794 (2007) (quoting Tietsworth v. Harley-Davidson, Inc., 677 N.W.2d 233, 242 (Wis. 2004)).

This court has held on several occasions that the economic-loss doctrine generally bars negligent misrepresentation claims brought by mortgagors against loan servicers/lenders related to a mortgage.[4]  Though there are certain recognized exceptions to this doctrine, see, e.g., Plourde, 154 N.H. at 795-96, 799, the plaintiffs have neither invoked an exception in this case nor pointed to evidence from which a reasonable trier of fact could conclude that such an exception applies.  It is neither this court's responsibility to fashion arguments or theories for the plaintiffs, see, e.g., Bartolomeo v. Liburdi, No. 97-0624-ML, 1999 WL 143097, at *3 (D.R.I. Feb. 4, 1999) (citation omitted), nor its obligation to scour the record for evidence the

---

[4] See, e.g., Mader v. Wells Fargo Bank, N.A., No. 16-cv-309-LM, 2017 WL 177619, at *3 (D.N.H. Jan. 17, 2017); Gasparik v. Fed. Nat'l Mortg. Ass'n, No. 16-CV-147-AJ, 2016 WL 7015672, at *4 (D.N.H. Dec. 1, 2016); Riggieri v. Caliber Home Loans, Inc., No. 16-CV-20-LM, 2016 WL 4133513, at *4-5 (D.N.H. Aug. 3, 2016); Bowser v. MTGLQ Inv'rs, LP, No. 15-CV-154-LM, 2015 WL 4771337, at *5 (D.N.H. Aug. 11, 2015).

plaintiffs themselves failed to identify, see, e.g., Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 79 (1st Cir. 2014) (citation omitted) ("[I]n the summary judgment context . . . [judges] are not 'pigs hunting for truffles in the record.'" (internal brackets and quotation marks omitted)). The plaintiffs' negligent misrepresentation claim is accordingly barred by the economic-loss doctrine.

Even if the economic-loss doctrine did not apply, however, SLS would still be entitled to summary judgment on the plaintiffs' negligent misrepresentation claim. The elements of a common-law negligent misrepresentation claim are (1) a negligent misrepresentation of a material fact by the defendant, and (2) justifiable reliance by the plaintiffs. Wyle, 162 N.H. at 413 (citation omitted). SLS has made the requisite showing in its motion for summary judgment of an absence of any genuine issue of material fact in the record as to either of these elements. See doc. no. 30-1, at 14-18. The burden accordingly shifts to the plaintiffs to demonstrate, with references to materials of evidentiary quality, that a trier of fact could reasonably resolve each of these elements in the plaintiffs' favor at trial. See Flovac, 817 F.3d at 853.

The plaintiffs' objection and supplemental briefing fail to meet this burden. In their objection, the plaintiffs state that their "negligent misrepresentation claim is grounded on the

argument that [SLS] signed them up for another modification with worse terms when they had been approved for a previous modification." Doc. no. 35, at 7.  They contend in their supplemental briefing that the two versions of the 2014 modification agreement in the record support a claim for negligent misrepresentation because they "put[] [SLS] on actual notice that the [plaintiffs] w[ere] under the impression that a modification ha[d] occurred . . . ."  Doc. no. 47, at 3.  Neither of these statements identifies, or points to evidence demonstrating, any misrepresentation of a material fact on the part of SLS.

The plaintiffs also contend in their supplemental briefing that "[t]he issue of the loan being forgiven directly supports the elements to show a negligent misrepresentation" because SLS "knew or should have known that the loan had in fact been forgiven by Bank of America."  Doc. no. 35, at 7.  These assertions similarly fail to identify any misrepresentation on the part of SLS.  Additionally, plaintiffs' counsel conceded at the hearing that no forgiveness actually occurred "as a matter of law," and that his clients merely held the belief that this amount had been forgiven by Bank of America.  In so conceding, plaintiffs' counsel necessarily abandoned any argument that SLS made a negligent misrepresentation in this regard.

In light of this lack of identifiable misrepresentations in

11

the plaintiffs' written filings, the court pressed plaintiffs' counsel at the hearing to identify an actionable misrepresentation attributable to SLS. Plaintiffs' counsel was unable to do so.

First, plaintiffs' counsel appeared to argue that SLS misrepresented having not received payments from the plaintiffs when in fact the plaintiffs had sent these payments to Bank of America. It is undisputed that SLS sent the plaintiffs a statement on November 9, 2012, informing them that Bank of America had transferred service of the plaintiffs' loan to SLS, that all future payments must be sent to SLS at the address provided, and that as of November 1, 2012, Bank of America ""w[ould] not accept payments from [the plaintiffs]." Doc. no. 30-3, at 32. The plaintiffs have not pointed to any evidence in the record supporting a conclusion that, despite this language, payments sent to Bank of America after November 1, 2012, would be considered received by SLS. Thus, no reasonable trier of fact could conclude that SLS made a misrepresentation in this regard.

Plaintiffs' counsel also appeared to contend that SLS made a misrepresentation by failing to take into consideration the plaintiffs' lack of sophistication. This assertion, when assumed true, once again fails to identify any misrepresentation on the part of SLS.

12

Finally, plaintiffs' counsel contended that SLS made misrepresentations to the plaintiffs by offering the plaintiffs the 2014 loan modification when they were pursuing the federal modification offered by Bank of America.  This argument appears to largely be a reiteration of the contentions raised in the plaintiffs' objection and supplemental briefing.  As discussed above, this argument fails to identify any misrepresentation of a material fact attributable to SLS.  It is accordingly insufficient to defeat summary judgment.

In sum, the court concludes that the plaintiffs' negligent misrepresentation claim is barred by the economic-loss doctrine.  And even if it were not, the plaintiffs have pointed to no evidence demonstrating that a trier of fact could reasonably resolve this claim in their favor at trial.  Accordingly, SLS's motion for summary judgment is granted as to Count II.

### III. Good Faith and Fair Dealing

The plaintiffs' specific theory as to how SLS breached the covenant of good faith and fair dealing has been difficult to pin down.  Initially, the plaintiffs appeared to allege that SLS either fraudulently altered the modified version of the 2014 agreement to create the version without the notation, or forged the version without the notation.  At the hearing, however, plaintiffs' counsel expressly disclaimed any allegation of fraud on the part of SLS and instead relied more generally on the

existence in the record of the two versions of the 2014 modification in support of the plaintiffs' good faith and fair dealing claim. The court will focus its analysis accordingly.

"In every agreement, there is an implied covenant that the parties will act in good faith and fairly with each other." Birch Broad, Inc. v. Capitol Broad. Corp., Inc., 161 N.H. 192, 198, 13 A.3d 224 (2010). New Hampshire law recognizes three distinct categories of good faith and fair dealing claims: 1) contract formation; 2) termination of at-will employment agreements; and 3) limitations of discretion in contractual performance. J & M Lumber & Const. Co. v. Smyjunas, 161 N.H. 714, 724 (2011).

This case plainly does not involve the termination of an at-will employment agreement. And the plaintiffs have not contended anywhere in their summary judgment filings (or, indeed, argued at the hearing) that SLS was conferred discretion under an agreement with the plaintiffs, that SLS abused this discretion, and that this abuse somehow damaged the plaintiffs. See Moore, 848 F. Supp. 2d at 129; Ahrendt v. Granite Bank, 144 N.H. 308, 313 (1999). Thus, the court's analysis is limited to the first category of good faith and fair dealing claims: those involving contract formation.

In the context of contract formation, the covenant of good faith and fair dealing is "tantamount to the traditional duties

14

of care to refrain from misrepresentation and to correct subsequently discovered error, insofar as any representation is intended to induce, and is material to, another party's decision to enter into a contract in justifiable reliance upon it." Centronics Corp. v. Genicom Corp., 132 N.H. 133, 139 (1989). This obligation "requires that if one party makes a representation of a material fact to another party for the purpose of inducing the other party to change his position or enter into a contract, the party making the representation must tell the truth." Bursey v. Clement, 118 N.H. 412, 414 (1978) (citations omitted). Additionally, "[o]ne who makes a representation that is true when made is under a duty to correct that statement if it becomes erroneous or is discovered to have been false before the transaction is consummated." Id. (citations omitted).

SLS has again met its burden of showing an absence of any genuine issue of fact in the record as to this claim. See doc. no. 30-1, at 18-20. Thus, the burden shifts to the plaintiffs to show, with reference to materials of evidentiary quality, the existence of a genuine issue of material fact for trial. See Flovac, 817 F.3d at 853. The plaintiffs have failed to meet this burden. As discussed above, the plaintiffs have failed to identify any misrepresentation or false statement attributable to SLS. They have similarly failed to identify any statement

15

made by SLS that was true at the time it was made but became erroneous or was discovered to be false before the parties entered into the 2014 modification agreement.  The plaintiffs have therefore failed to demonstrate that a trier of fact could reasonably resolve this claim in their favor.

The plaintiffs appear to contend that, before entering into the 2014 modification, SLS had an obligation to correct the plaintiffs' mistaken belief that $102,535.12 had been forgiven under the 2012 modification.  This argument is premised on plaintiffs' counsel's hypothesis at the hearing that the plaintiffs sent both the notated and non-notated versions of the 2014 modification agreement to SLS, thereby putting SLS on notice of their mistaken belief.  Even assuming SLS received both copies, however, this does not create a triable good faith and fair dealing claim.  The above precedent only contemplates a party being obligated to correct an error when that party is somehow responsible for causing that error in the first place. See, e.g., Bursey, 118 N.H. at 414.  The plaintiffs have not identified any evidence supporting a conclusion that their misunderstanding here with regards to the loan forgiveness was somehow caused by SLS.  Nor have they identified any precedent supporting broader liability under the covenant of good faith and fair dealing for any contracting party that fails to correct a misapprehension on the part of another party to that contract.

16

Cf. L'Esperance v. HSBC Consumer Lending, Inc., No. 11-cv-555-LM, 2012 WL 2122164, at *18 (D.N.H. June 12, 2012) (noting that "it would appear that for pre-formation misrepresentation to be a breach of the implied covenant of good faith and fair dealing, the misrepresentation must have been made with scienter"). Thus, their good faith and fair dealing claim cannot survive on this basis.[5]

In sum, there is no genuine dispute of material fact in the record that would allow the plaintiffs to go to trial on their good faith and fair dealing claim. SLS's motion for summary judgment is accordingly granted as to Count III.

## **Conclusion**

A trier of fact might reasonably conclude, based on the

---

[5] Notably, the plaintiffs have not brought a claim seeking to void or rescind the 2014 modification based on their mistaken belief with regard to loan forgiveness. This is perhaps unsurprising, given that in the absence of this modification, the parties would be subject to the 2012 modification, and there is no dispute in the record that the plaintiffs were in default of that modification. See Elias Aff. ¶ 14 (admitting that the plaintiffs were more than three months behind on their payments under the 2012 modification at the time they started sending payments to SLS).

Additionally, at the hearing plaintiffs' counsel characterized the notated version of the 2014 modification agreement as a "counteroffer," which he conceded he had no evidence SLS ever accepted. This effectively negated any allegation in the plaintiffs' written filings that the notated version of 2014 modification agreement was the operative version based on the plaintiffs' understanding as to forgiveness of the $102,535.12.

record, that the plaintiffs harbored certain mistaken beliefs when they entered into the 2014 modification.  But a party's mistaken belief alone does not establish a triable claim for negligent misrepresentation or breach of the covenant of good faith and fair dealing.  Here, despite the plaintiffs' beliefs, the undisputed facts in the record fail to sustain either claim.  SLS's motion for summary judgment, doc. no. 30, is accordingly granted.

In light of this determination, SLS's motion to amend its answer to the amended complaint (doc. no. 45) is denied as moot.  The clerk of the court shall enter judgment in accordance with this order and close the case.

SO ORDERED.

_____
Andrea K. Johnstone
United States Magistrate Judge

April 5, 2017

cc:   Keith A. Mathews, Esq.
      Christopher J. Fischer, Esq.